IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARTIN BENJAMIN FULLER,     )
                                  )
        Plaintiff,          )
                                  )
        v.              )     C.A. No. 15-538-LPS
                                  )
NANCY A. BERRYHILL,        )
ACTING COMMISSIONER OF   )
SOCIAL SECURITY,[1]       )
                                  )
        Defendant.     )

---

Gary C. Linarducci, Jason L. Thompson, LINARDUCCI & BUTLER, New Castle, DE.

     Attorneys for Plaintiff.

David C. Weiss, Acting United States Attorney, and Patricia A. Stewart, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE.

Nora Koch, Acting Regional Chief Counsel, Region III, and Evelyn Rose Marie Protano, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION – REGION III OFFICE OF GENERAL COUNSEL, Philadelphia, PA.

     Attorneys for Defendant.

## MEMORANDUM OPINION

March 28, 2017
Wilmington, Delaware

---

[1]Nancy A. Berryhill is now Acting Commission of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Commissioner Carolyn W. Colvin as defendant in this suit.

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff Martin Benjamin Fuller ("Fuller" or "Plaintiff") appeals from a decision of

Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the

Commissioner" or "Defendant"), denying his claims for disability insurance benefits ("DIB")

under Title II, 42 U.S.C. §§ 401-434, of the Social Security Act.  The Court has jurisdiction

pursuant to 42 U.S.C. § 405(g).  Before the Court are cross-motions for summary judgment filed

by Plaintiff and the Commissioner.  (*See* D.I. 8, 10)

Plaintiff seeks DIB from October 31, 2010 through the present (*see* D.I. 9 at 1) or, in the

alternative, asks for remand and further proceedings before the Commissioner (*see id.* at 18).

The Commissioner requests that the Court affirm the decision denying Plaintiff's application for

benefits.  (*See* D.I. 11 at 20)

For the reasons set forth below, the Court will grant in part and deny in part Plaintiff's

and Defendant's motions for summary judgment.

## II.    BACKGROUND

### A.    Procedural History

On April 1, 2011, Plaintiff filed a Title II application for disability insurance benefits.

(*See* D.I. 5 ("Tr.") at 159)  Plaintiff's application was denied at the initial level of administrative

review on April 26, 2012 (*see id.* at 101) and was denied on reconsideration on July 18, 2012.

(*See id.* at 108)  After a hearing before an Administrative Law Judge ("ALJ") on February 18,

2014 (*see id.* at 29), the ALJ issued a decision on March 7, 2014, finding that Plaintiff did not

have a disability within the meaning of the Social Security Act because his alleged conditions

were not severe enough to prevent him from working. (*See id.* at 25)  Plaintiff filed a request for

review of the hearing decision and order, which was denied. (*See id.* at 1)  Thus, the ALJ's

decision of March 7, 2014 became the Commissioner's final decision. (*See id.*)

On June 25, 2015, Plaintiff filed suit in the District of Delaware, seeking judicial review

of the Commissioner's denial of benefits. (*See* D.I. 1)  The parties completed briefing on their

cross-motions for summary judgment on December 23, 2015. (*See* D.I. 12)

**B.      Factual History**

Plaintiff was 48 years old at the onset of his alleged disability. (*See* Tr. at 32)  He has a

GED and previously worked as a K-9 police officer. (*See id.* at 35-36)  Plaintiff contends that he

cannot work because he has right shoulder problems, including capsulitis, tendonitis, and

degenerative disc disease. (*See id.* at 33, 42)

Plaintiff's last insured date for purposes of DIB was December 31, 2011. (*See id.* at 32-

33)

**1.      Plaintiff's Testimony**

On February 18, 2014, Plaintiff testified before the ALJ in support of his petition for

benefits. (*See id.* at 33-57)  Plaintiff said that he took disability retirement from his job as a K-9

police officer because he was injured in the neck and right shoulder. (*See id.* at 38, 42)  He

testified that he could not lift anything with his right hand because of numbness in his fingers.

(*See id.* at 50)  To manage his pain, Plaintiff takes over-the-counter pain relievers and uses ice,

heat, and hot tub therapy. (*See id.* at 45, 61)  Plaintiff's daily activities include watching

television and performing light household chores. (*See id.* at 55)  Plaintiff also rests during the

daytime to alleviate his pain. (*See id.* at 56)  Since injuring his neck and right shoulder, Plaintiff

has developed anxiety and depression. (*See id.* at 53) Plaintiff takes medications for anxiety and depression, but his depression has "gotten worse." (*Id.* at 59)

### 2.      Doctors' reports

#### a.      Dr. Edward R. Stankiewicz

Plaintiff began seeing Dr. Stankiewicz in February 2010 for pain in his right shoulder due to his work injury and continued to see him for the same condition through March 2011. (*Id.* at 238-73) Upon examining Plaintiff on multiple occasions, Dr. Stankiewicz found that Plaintiff's neck was "supple," but found "right shoulder tenderness." (*E.g.*, *id.* at 259, 261, 263, 265, 267) During his visits with Dr. Stankiewicz in 2010, Plaintiff complained of "pain and loss of full function in the right shoulder" (*id.* at 259) and a lack of "full range of motion" in his right shoulder (*id.* at 255). In response to such concerns, Dr. Stankiewicz prescribed Plaintiff several medications during this period, including Cipro, Nexium, Flagyl, Hydrocortisone, Percocet, and Lexapro. (*See id.* at 256, 258, 260)

#### b.      Dr. Mark Case

Plaintiff began seeing Dr. Case in January 2011. (*See id.* at 286) Dr. Case characterized the severity of Plaintiff's neck pain as "moderate" and the severity of his shoulder pain as "mild." (*Id.* at 288) According to Dr. Case, Plaintiff had a "decreased range of motion" due to his neck pain and a "loss of function" due to his shoulder pain. (*Id.*) On February 3, 2011, Plaintiff underwent an MRI of the cervical spine. The MRI results indicated that Plaintiff had a "bilateral uncovertebral spur, contributing to mild foraminal narrowing" at C3-C4 and had a "right uncovertebral spur, contributing to right foraminal narrowing" at C4-C5. (*Id.* at 282) Additionally, Plaintiff had a "mild posterior disc bulge with small central disc protrusions with

3

annular tear" at both C5-C6 and C6-C7. (*Id.*) While reviewing the results of the MRI, Dr. Case

noted that Plaintiff's neck pain and shoulder pain were "worsening" and referred him to physical

therapy. (*Id.* at 296-97) Dr. Case also prescribed Lexapro, Nexium, and Zithromax. (*Id.* at 295)

During Plaintiff's last follow-up visit in 2011, Dr. Case again noted that Plaintiff's neck pain and

shoulder pain were "worsening" (*id.* at 307-08) and prescribed Lidoderm in addition to Lexapro,

Nexium, and Zithromax (*see id.* at 306).

Dr. Case completed a Medical Source Statement of Ability to Do Work-Related

Activities (Physical) on June 27, 2013. (*Id.* at 382-88) Dr. Case indicated that Plaintiff could

continuously lift up to 10 pounds and occasionally lift up to 50 pounds, but could never lift above

51 pounds. (*See id.* at 382) He noted that Plaintiff could sit, stand, and walk for up to one hour

each during an eight-hour workday and "alternat[e]" between the three during the remaining five

hours. (*Id.* at 383) Additionally, Dr. Case noted that Plaintiff could never reach, handle, feel,

push, or pull with his right hand, but could occasionally perform all those tasks with his left hand

and could occasionally finger with both hands. (*See id.* at 384) According to Dr. Case, Plaintiff

could occasionally climb stairs and ramps, but never climb ladders or scaffolds, balance, kneel,

stoop, crouch, or crawl. (*See id.* at 385) Dr. Case concluded that Plaintiff's pain was

"incapacitating" and that medications would "severely limit [Plaintiff's] effectiveness in the

workplace due to distraction, inattention, drowsiness, etc." (*Id.* at 388)

### c.    Residual Functional Capacity ("RFC") Assessments

The ALJ utilized the findings of three experts in making his RFC determination: Dr.

Vinod Kataria; state agency consultant Dr. Dianne Bingham; and the vocational expert, Samuel

Eldleman. Drs. Kataria and Bingham assessed Plaintiff in April and March 2012, respectively, as

4

part of the initial review of Plaintiff's application. (*See id.* at 82, 86) The vocational expert testified at the hearing before the ALJ on February 18, 2014. (*See id.* at 67)

Dr. Kataria found that Plaintiff had exertional limitations. (*See id.* at 82) Despite such limitations, Dr. Kataria noted that Plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. (*See id.* at 83) Dr. Kataria also found that Plaintiff had postural limitations, but could sit, stand, or walk, with normal breaks, for "[a]bout [six] hours in an [eight-hour] workday." (*Id.*) Lastly, Dr. Kataria concluded that Plaintiff had certain manipulative limitations: Plaintiff's "[r]ight [o]verhead" reaching was limited, although Plaintiff's handling and fingering were without limitations. (*Id.*)

Dr. Bingham stated that Plaintiff's depression and anxiety were "due to [his] physical impairments." (*Id.* at 81) Nevertheless, Dr. Bingham found that Plaintiff's affective and anxiety-related disorders did not satisfy any diagnostic criteria. (*See id.*) Therefore, according to Dr. Bingham, Plaintiff's limitations due to depression and anxiety were "non-severe." (*Id.*)

At Plaintiff's hearing on February 18, 2014, the ALJ asked the vocational expert to consider a hypothetical person similar to Plaintiff in age, education, work history, and physical and workplace capabilities. (*See id.* at 68-70) Specifically, the hypothetical individual was one with the following restrictions: "[n]o climbing of ladders, ropes, or scaffolds;" "no crawling;" and "occasional" postural activities. (*Id.* at 68) The hypothetical individual also had restrictions with respect to his or her "right domina[nt] upper extremity" and could not engage in overhead reaching, pushing or pulling. (*Id.*) The individual, however, could occasionally engage in "handling, fingering, and feeling with that right domina[nt] upper extremity." (*Id.*) The expert determined that such a person could perform the occupations of a cashier, toll collector, and

5

parking lot attendant. (*See id.* at 69-70)

### C.     The ALJ's Findings

Plaintiff appeals the ALJ's March 7, 2014 decision, which made the following findings:

1.      The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2.      The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2010 through his date of last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical spine, right shoulder encapsulitis, anemia, gastritis, depression, and anxiety (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant cannot climb ladders/ropes/scaffolds or crawling, but he can perform crouching, climbing ramps/stairs, stooping, kneeling, and balancing occasionally; as to the right upper extremity, the claimant cannot perform overhead reaching, pushing, or pulling, and can perform only occasionally handling, fingering, and feeling with the extremity; the claimant cannot work where he would be exposed to extreme cold temperatures, vibration, or hazards; his work must consist of simple, routine, repetitive tasks with only superficial contact with the public and co-workers; the claimant must work in a stable environment with only occasional change in the work process from day to day.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on August 15, 1962 and was 49 years old, which is defined as a younger individual 18-49, on the date last insured (20 CFR 404.1563).

6

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined through the Social Security Act, at any time from October 31, 2010, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

(*Id.* at 17-25)

## III.   LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining the appropriateness of summary judgment, the Court must "review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted).  If the Court is able to determine that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

7

## B.    Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence,

8

particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV.   DISCUSSION

### A.   Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. *See* 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI and DIB as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(l)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-23 (2003).

9

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 CFR § 416.920; *see also Russo v. Astrue*, 421 F. App'x 184, 188 (3d Cir. Mar. 21, 2011). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. § 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 CFR § 416.920(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See id.* If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. § 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by

10

his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999) (internal citation omitted).

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. § 416.920(a)(4)(v) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See id.* In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

### B.    Arguments on Appeal

Plaintiff contends that the ALJ: (1) "committed reversible error by improperly rejecting the well-supported opinion of Plaintiff's treating physician;" (2) "erred by finding Plaintiff not disabled while relying upon Vocational Expert testimony which was wholly inconsistent with his hypothetical question;" and (3) "erred by relying upon an incomplete hypothetical question." (D.I. 9 at 1) In response, the Commissioner argues that the ALJ's findings were supported by substantial evidence and that the ALJ's decision should be affirmed. (*See* D.I. 11 at 1-2) The Court addresses the parties' disputes below.

11

## 1.     Treating Physician Opinion

Plaintiff argues that the ALJ failed to give adequate weight to the opinion of his treating physician, Dr. Case.[2] (*See* D.I. 9 at 9)  Defendant responds that the ALJ reasonably assigned little weight to Dr. Case's opinion because it was inconsistent with substantial evidence in the record and because Dr. Case's opinion did not relate back to the date last insured. (*See* D.I. 11 at 11, 13)

The Third Circuit subscribes to the "treating physician doctrine." *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  According to this rule, a treating physician's opinion is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the record." *Fargnoli*, 247 F.3d at 43.  "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (internal citation omitted).

When there is medical evidence contradicting the treating physician's view, the ALJ must carefully evaluate how much weight to accord the treating physician. *See Gonzalez*, 537 F. Supp. 2d at 660.  Additionally, if the treating physician's opinion does not relate to the period between the alleged onset date and the date last insured, the ALJ may find that the treating physician's opinion "lack[s] probative value" and accord it less weight. *Beety-Monticelli v. Comm'r*, 343 F.

---

[2] Plaintiff actually argues that the ALJ "reject[ed]" Dr. Case's opinion (D.I. 9 at 9), but the record shows that the ALJ in fact gave the opinion "little weight" (Tr. at 22).

App'x 743, 746 (3d Cir. Aug. 28, 2009). A decision not to give controlling weight to the opinion

of a treating physician does not automatically result in giving no weight whatsoever to that

opinion. *See Gonzalez*, 537 F. Supp. 2d at 660. In determining how much weight to accord to a

treating physician's opinion, an ALJ must weigh all the evidence and resolve all material

conflicts. *See Barnhill v. Astrue*, 794 F. Supp. 2d 503, 515 (D. Del. 2011).

    If a treating physician's opinion is not given controlling weight, the ALJ should consider

various factors in determining the weight to give it, including: the length, nature, and extent of

the treatment relationship; the frequency of examination; the amount of medical evidence offered

in support of the opinion; the consistency of the opinion with the record as a whole; and the

specialization of the treating physician. *See* 20 C.F.R. §§ 416.1527(c)(2)-(6). Further, when an

ALJ's decision is to deny benefits, the notice of the determination must "contain specific reasons

for the weight given to the treating source's medical opinion, supported by substantial evidence

in the case record." S.S.R. 96-2p, 1996 WL 374188, at 5. The ALJ's notice of the determination

"must [also] be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave the treating source's medical opinion and the reasons for that weight." *Id.*

    In evaluating this evidence, the ALJ should be mindful that "non-examining state agency

medical and psychological consultants are 'highly qualified' physicians and psychologists and

'experts in the evaluation of the medical issues in disability claims under the Social Security Act

(the 'Act'),' [and] their opinions on [a] claimant's residual functional capacity are entitled to

weight." *Jopson v. Astrue*, 517 F. Supp. 2d 689, 702 (D. Del. 2007) (citing 20 C.F.R.

§§ 404.1527(e)(2)(I), 416.927(e)(2)(I)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356,

361 (3d Cir. 2011) ("[S]tate agency opinions merit significant consideration."); *Coleman v.*

*Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. July 13, 2012).

If the ALJ considers the opinions of non-treating physicians, such opinions must be examined for whether, and how well, they take into account other evidence in the record, including the view of treating physicians. *See* 20 CFR § 416.927(c)(3). "[B]ecause nonexamining sources have no examining or treating relationship with [the patient], the weight [given to] their opinions will depend on the degree to which they provide supporting explanations for their opinions." *Id.*

In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Gonzalez*, 537 F. Supp. 2d at 659. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.*

Here, the ALJ gave limited weight to the opinion of Plaintiff's treating physician, Dr. Case. (Tr. at 22) The ALJ found that the opinion was contradicted by Dr. Case's own "treating notes and the remainder of the objective medical evidence, . . . which d[id] not support a finding of disability." (*Id.*)

Substantial evidence may support this conclusion. An ALJ "d[oes] not err in assigning limited weight" to treating physicians' opinions if such opinions are inconsistent with objective medical evidence and other medical assessments. *Hudson v. Comm'r*, 93 F. App'x 428, 431 (3d Cir. Apr. 2, 2004); *see also Leibig v. Barnhart*, 243 F. App'x 699, 701 (3d Cir. June 19, 2007) (holding that ALJ did not err in giving limited weight to treating physician's opinion when that opinion was inconsistent with other medical assessments). Dr. Case opined that Plaintiff's pain was "incapacitating" (Tr. at 388), but Dr. Case's treating notes characterized Plaintiff's shoulder pain as "mild" and noted that Plaintiff's right shoulder was within normal limits (*id.* at 288). Dr.

Case's notes further indicated that Plaintiff's neck was "supple" and that Plaintiff's shoulder was of normal strength. (*Id.* at 311)

Given the arguable contradictions between the Dr. Case's opinion and his medical records, it is possible that substantial evidence supports the ALJ's determination to give little weight to Dr. Case's opinion. However, there is sufficient ambiguity in the record to warrant a remand. This is principally because the ALJ also found that Dr. Case's opinion did not relate to the period between the alleged onset date and the date last insured (*See* Tr. at 23) – but that finding may be incorrect.

Dr. Case completed his questionnaire in June 2013, but Plaintiffs date last insured was December 31, 2011. (*See id.*) The parties dispute whether, when Dr. Case was completing the form, he was giving his opinion as to Plaintiff's condition in December 2011 (which would be relevant) or instead his opinion as to Plaintiff's condition at the later (uninsured and irrelevant) date of June 2013. (*See* D.I. 9 at 12; D.I. 11 at 11-12)[3] The words written and typed on the form itself – including a note Plaintiff's counsel indicates was added by counsel, directing Dr. Case to give an opinion as to December 2011, and a standard preprinted note on the form, which suggests the opinion being given was for the "present," i.e., the date on which the form is being completed – are ambiguous. (*See* Tr. at 382, 387; D.I. 11 at 12; D.I. 9 at 12)

The Court will remand to allow the ALJ to make a determination as to whether Dr. Case's opinion is for December 2011 or for June 2013. The record is unclear on this point. Yet the ALJ's finding that the opinion was directed to the irrelevant June 2013 date may have

_____

[3]A physician's opinion lacks probative value if it "d[oes] not relate back to the period for which Plaintiff [was] insured for benefits." *Jones v. Barnhart*, 2005 WL 2033383, at *6 (E.D. Pa. Aug. 23, 2005).

15

impacted the ALJ's assessment of the weight to be given to that opinion.

### 2. Vocational Expert Testimony

Plaintiff argues that the ALJ erred in relying on the vocational expert's ("VE") testimony because the ALJ did not ask whether the jobs identified by the VE were consistent with the Dictionary of Occupational Titles ("DOT"). (*See* D.I. 9 at 16) Because of allegedly unresolved conflicts between the DOT and the VE's testimony, Plaintiff further argues that someone with Plaintiff's limitations cannot perform the jobs identified by the VE. (*See id.*) The Commissioner responds that the ALJ did ask the required question, and "there were no apparent unresolved conflicts between the VE's testimony and the DOT." (D.I. 11 at 16) The Commissioner further claims, that, "[e]ven if a conflict[] existed, any error was harmless because the VE accounted for" Plaintiff's limitations. (*Id.*)

"As a general rule, occupational evidence provided by a VE should be consistent with the occupational evidence presented in the DOT." *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. Dec. 9, 2014). However, "the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." *Id.* (emphasis and internal quotation marks omitted). Nevertheless, if "[P]laintiff is essentially precluded from performing . . . [any] job[] identified by the VE" on the basis of the ALJ's residual functional capacity formulation, then "the court cannot conclude that the ALJ's decision . . . is supported by substantial evidence." *Davis v. Astrue*, 741 F. Supp. 2d 582, 590-91 (D. Del. 2010) (finding that "distinction [between frequent and occasional use] is not inconsequential, particularly when it pertains to limitations on one's ability to use one's hands"). In such cases, courts may "remand th[e] matter to the ALJ for further findings and/or

16

proceedings." *Id.* at 591.

The Court will remand. The three jobs the VE identified that Plaintiff would be capable of performing – cashier, toll collector, and parking lot attendant (*see* Tr. at 69-70) – require *frequent* reaching, handling, and fingering, or *frequent* reaching and handling (*see* D.I. 9-1 Ex. 1 at 3; D.I. 9-2 Ex. 2 at 3; D.I. 9-3 Ex. 3 at 3). The ALJ's RFC determination, which provided the basis for the ALJ's hypothetical posed to the VE, provided that Plaintiff could "perform only *occasional*[] handling [and] fingering." (Tr. at 19) (emphasis added) "'Occasional[]' means occurring from very little up to one-third of the time," SSR 83–10, 1983 WL 31251, at *5 (Jan. 1, 1983), while "'frequent means occurring from one-third to two-thirds of the time," *id.* at *6. Therefore, the ALJ's conclusion that Plaintiff could "perform only occasional[] handling [and] fingering" (Tr. at 19) seems to "preclude[] [P]laintiff from being capable of performing any of the jobs identified by the VE." *Davis*, 741 F. Supp. at 591.

While the record shows the ALJ asked the VE whether there were any conflicts between the VE's opinion and the DOT, the VE's response is recorded as partially inaudible. (*See* Tr. at 70) Moreover, the record is devoid of any recognition – by the ALJ, the VE, or even Plaintiff's counsel – of the apparent conflict between the "occasional" limitation of Plaintiff's RFC and the "frequent" requirement of the jobs the ALJ found Plaintiff could perform. Hence, the Court concludes that the proper outcome is to remand to allow the Commissioner to determine if there is a conflict, and if so, to explain how (if at all) it may be resolved. The Court is not prepared to conclude on the basis of the current record that error, if there was any, was harmless.[4]

---

[4]The ALJ did not address whether Plaintiff could engage in non-overhead reaching. (*See* Tr. at 19) All three jobs identified by the VE require frequent reaching. (*See* D.I. 9-1 Ex. 1 at 3; D.I. 9-2 Ex. 2 at 3; D.I. 9-3 Ex. 3 at 3) On remand, the ALJ may need to explore this potential

17

### 3. Hypothetical Question

Finally, Plaintiff argues that the ALJ relied on flawed vocational expert testimony because the ALJ failed to describe accurately all of Plaintiff's limitations. (*See* D.I. 9 at 17) Specifically, Plaintiff argues that the ALJ's hypothetical question "omit[ted] credibly established limitations" put forth by Dr. Case and, thus, did not "constitute substantial evidence." (*Id.*) The Commissioner responds that "it [was] within the ALJ's discretion whether to submit [a] limitation" that "is supported by some medical evidence but controverted by other evidence in the record." (D.I. 11 at 19)

An ALJ is not required to "submit to the [VE] every impairment alleged by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis omitted). Instead, the ALJ need only "convey . . . all of a claimant's credibly established limitations." *Id.* (emphasis omitted). "[L]imitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible – the ALJ can choose to credit portions of the existing evidence but cannot reject [the] evidence for no reason or for the wrong reason." *Id.* (internal quotation marks omitted).

Resolution of this issue turns on the same considerations as resolution of the first issue on appeal: the weight given to Dr. Case's opinion. Accordingly, on remand, any hypothetical to a VE will have to reflect all limitations the ALJ finds are credibly established, and only such limitations.

---

inconsistency as well.

18

## V.      CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendant's and Plaintiff's motions for summary judgment. An appropriate Order follows.